**FILED**

JAN 2 6 2022

ALISA BLACK, CLERK
BY_____ _AL_ 12:42 D.C.

IN THE CIRCUIT COURT OF SHARP COUNTY, ARKANSAS

SHARP OFFICE SUPPLY, INC.

       Plaintiff,

    v.

WASTE CONNECTIONS US, INC. and WASTE
CONNECTIONS OF ARKANSAS, INC

       Defendants.

Case No.: 68 CV-22-10

CLASS ACTION

## CLASS ACTION COMPLAINT

Plaintiff Sharp Office Supply, Inc. files this Class Action Complaint against Defendants Waste Connections US, Inc. and Waste Connections of Arkansas, Inc. (collectively "Waste Connections" or "Defendants") on behalf of itself and all others similarly situated in Arkansas. In support thereof, Plaintiff states the following:

### I.    NATURE OF THE CASE

1.    Waste Connections has engaged in a widespread and systematic practice of overcharging its customers through two separate, but related, coordinated schemes: implementing unlawful rate increases and charging unlawful and excessive "Fuel Surcharges".

2.    Waste Connections is one of the largest solid waste disposal companies in the United States, with more than $5 billion in annual revenue. Like thousands of other small businesses across the country, Plaintiff pays Waste Connections for waste disposal pursuant to a standard, preprinted contract. Notably, this contract is uniform among putative class members in

1

all relevant aspects and typically contains a multi-year term. The primary purpose of the form contract is to establish prices a given customer will pay Waste for waste pickup.

3.      In violation of the form contract and of Arkansas law—which governs all claims in this litigation—Waste Connections has carried out a systematic scheme to charge its customers more than the agreed amounts.

4.      Waste Connections enters into the agreements knowing that it will increase the promised prices without justification. The contracts specifically restrict Waste Connections' ability to increase rates to five specific circumstances, only one of which is at issue in this case.[1] Specifically at issue here, Waste Connections implements systematic rate increases purportedly "to adjust for any increase in…the Consumer Price Index for all Urban Consumers," but, which far out-strip the increases (if any) in the consumer price index ("CPI") and which are not—in intent or effect—made to adjust for increases thereto. These rate increases are imposed frequently and are significant in amount, often exceeding 50% over the course of a contractual term, and greatly exceed the increases in the consumer price index—or amounts needed to adjust for increases in CPI—which purportedly justify them.

5.      In addition to imposing automated, excessive rate increases on its customers, Waste Connections has also increased prices by imposing a fee it calls a "Fuel Surcharge." The uniform contractual language present in every class member's contract establishes that Waste Connections may only "proportionately" pass through increases in fuel and material costs to customers. However, the "Fuel Surcharge" that Waste Connections imposes has no relationship to its increased fuel costs and does not approach "proportionately' assessing such costs to customers.

---

[1] Any other increases can only be implemented with the affirmative "consent" of customers. Waste Connections neither sought nor obtained consent, as the increases at issue were purportedly made under the other provision of the contract, specified herein.

Rather, Waste Connections uses this fee—in intent and effect—as a hidden price increase. In fact, Waste Connections includes any fuel costs it might incur in delivering its services through the standard rates it charges customers. Waste Connections simply uses the Fuel Surcharge to generate extra profit at its customers' expense, all the while deceiving customers into believing that the fee is a legitimate charge directly related to specific increased costs it incurs.

6.      Plaintiff, through the allegations set out herein, asserts that the Rate Increases and Fuel Surcharges are excessive (greater than Waste Connections' related increased costs), and does not seek a full return of all Fuel Surcharges and Rate Increases at this time, but rather only seeks to refund the excessive amount above Waste Connections' actual, quantifiable increased related costs (to the extent Waste Connections can identify any such costs).

7.      Further, this case presents a prototypical situation for class treatment. Waste Connections' conduct—including all relevant practices, conduct, and documents—is uniform among all customers. The application of common law to an identical course of conduct will determine liability for the classes as a whole, ensuring that the rights of thousands of small businesses are vindicated through the efficiency of a single trial.

## II. JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over Defendants. Defendant Waste Connections of Arkansas, Inc. is authorized to do business in Arkansas. All of the Defendants in fact do business in Sharp County, Arkansas. The conduct of all of the Defendants at issue in this case in part originated and took place in Sharp County, Arkansas—including the Defendants' conduct in charging and assessing the rate increases and fees—and Defendants could reasonably anticipate litigation in this County under traditional notions of fair play and substantial justice.

9.      Venue is proper in this Court under Arkansas Code § 16-60-101. Plaintiff's

principal office is located in Sharp County, Arkansas, and the conduct giving rise to Plaintiff's claims occurred in substantial part in this County.

### III.    PARTIES

10.    Sharp Office Supply, Inc. is an Arkansas entity with its principal place of business in Sharp County, Arkansas.

11.    Plaintiff's experience with Waste Connections is typical of the classes in all relevant aspects. Plaintiff has received commercial dumpster service from Waste Connections for years. Waste Connections uniformly enters into form contractual agreements with all commercial customers and, though Plaintiff no longer has a copy of the contract in its possession, Waste Connections will not provide services for commercial customers without entry into such a form contract and, upon information and belief following investigation, Plaintiff entered into such a contract with Waste Connections. Waste Connections unilaterally and unlawfully implemented automated rate increases that affected Plaintiff on multiple occasions (in that Plaintiff paid the rate increases), that did not comply with the contractual terms. Plaintiff was invoiced and paid multiple "Fuel Surcharges" to Waste Connections within the statutory period while under the form contract. The direct and proximate result of these unlawful, deceptive, and unfair automated rate increases and Fuel Surcharges is that Plaintiff has been damaged by paying more than agreed.

12.    Waste Connections of Arkansas, Inc. and Waste Connections US, Inc. are Delaware corporations. Both of the Defendants have a principal address at 3 Waterway Square Place, Suite 110, The Woodlands, TX 77380. Both do business in the state of Arkansas.

13.    Defendants, and their related entities, operate as a single organization with regard to the conduct at issue in this lawsuit. Waste Connections US, Inc. and Waste Connections of Arkansas, Inc. share management structure and financial accounting and any legal distinction

4

between these entities is a fiction designed to limit liability. These entities were directly involved in—and responsible for—the conduct alleged herein. Upon information and belief, Waste Connections US, Inc. designed, implemented, charged, and collected the Fuel Surcharges and rate increases, which contribute directly to their profit margins. Generally, upon information and belief, Waste Connections US, Inc. assesses the fees and rate increases, determines the amount of the fees and rate increases, and invoices for and collects payment for the fees and rate increases. Waste Connections of Arkansas, Inc., at Waste Connections US, Inc.'s direction, acts as the forward-facing entity upon contracting and provides services to Waste Connections US, Inc. All management level decisions are made by Waste Connections US, Inc.

## IV.    FACTUAL ALLEGATIONS

14.    Waste Connections is one of the largest waste disposal companies in the United States, with millions of customers, locations in forty-one states, and over $5 billion in annual revenue.

15.    Plaintiff is a small business in Sharp County, Arkansas. For its business, Plaintiff requires solid waste disposal services and, like thousands of other small businesses entered into an agreement with Waste Connections to provide these services.    Waste Connections uses a pre-printed, form agreement that primarily establishes a set rate for disposal services and which contains standardized language that governs it. The agreement also provides how Waste Connections may be able to increase rates to pass through specific cost increases it incurs during the pendency and renewal terms of that contact. Like hundreds of other small businesses across Arkansas, after locking Plaintiff into one of these long-term contracts, Waste Connections systematically increased rates with no contractual justification and unilaterally imposed unlawful fuel surcharges.

5

16.    First, Waste Connections' systematic, automated rate increases do not—in intent or effect—adjust for increases in the Consumer Price Index ("CPI") identified in the uniform contractual provision that allows for them.   Rather, after entering into long-term, fixed-rate contracts, Waste Connections carries out a deliberate scheme to repeatedly increase rates without contractual justification by amounts that far exceed any increases in CPI.  Upon information and belief, it does so through a consistent, centralized automated rate increase process that was intended to glean unearned profit from its customers.   This conduct breaches the form contract.

17.    Second, the fees Waste Connections calls "Fuel Surcharges" violate the standard provision of the contract establishing that Waste Connections can only pass through its actual increased fuel costs proportionately to customers. The fee Waste Connections calls a "Fuel Surcharge" is not, in fact, a true surcharge at all; it is not related to Waste Connections' increased fuel costs, charged proportionately to recovered such increased costs, or applied to recoup such costs. Waste Connections' charging of these fuel surcharges violates the form contract and, alternatively, Waste Connections is unjustly enriched by its collection of those fees.

**A.    The Standardized, Uniform Language At Issue.**

18.    Waste Connections used effectively standardized "customer service agreements" to contract with customers regardless of location.  Every putative class member entered into such an effectively identical form contract.  All relevant terms are pre-printed by Waste Connections, including the uniform "Rate Adjustments" provision that governs the rate increases at issue in this litigation.  Several categories of customer-specific information—including the billing and service addresses, names and contact information, initial set rates, and other information needed for Republic to input the new customer into its information systems—is typed or written in for each specific customer. Upon information and belief following investigation, this must be completed

6

before Waste Connections will serve a new commercial customer such as Plaintiff.

19.    This Rate Adjustments provision allows for Waste Connections to make increases

and pass-through specific, discrete increases in costs it may incur in providing services to

customers. Specifically, it states that:

> **Customer agrees that the rates charged by Contractor hereunder shall be
> increased from time to time to adjust for increases in the Consumer Price
> Index. Because disposal, fuel, materials and operations costs constitute a
> significant portion of the cost of Contractor's services provided hereunder,
> Customer agrees that Contractor may increase the rates hereunder
> proportionately to adjust for any increase in such costs** or any increases in
> transportation costs due to changes in location of the disposal facility. Customer
> agrees that Contractor may also proportionately pass through to Customer increases
> in the average weight per container yard of Customer's waste materials, increases
> in Contractor's costs due to changes in local, state or federal rules, ordinances or
> regulations applicable to Contractor's operations or the services provided
> hereunder, and increases in taxes, fees or other governmental charges assessed
> against or passed through to [Waste Connections] . . . .[emphasis added]

20.    Thus, under the express terms of this provision, Waste Connections may implement

rate increases to adjust for "increases" to—at issue here—increases in the Consumer Price Index.

Waste Connections purportedly implements rate increases to adjust for increases in the Consumer

Price Index through systematic, automated rate increases uniform among its customers. As detailed

herein, Waste Connections violates the form contractual language by increased rates by far more

than CPI.

21.    This provision also establishes that Waste Connections may pass through its

"increase" in "fuel" costs to customers so long as it does so "proportionately to adjust for" such

costs. Waste Connections purports to do so through a standard "Fuel Surcharge." As detailed

herein, this fee violates the form contractual language because it does not proportionately recover

such fuel costs.

22.    Aside from establishing the fixed rate for service and the limited manner in which

7

Waste Connections may charge more than this rate, the form contract also contains other relevant standard provisions which (a) establish a term of at least one year, (b) integrate the contract, and (c) allow Waste Connections punitive remedies including suspension, the payment of fees, and the payment of future amounts—up to six months—that Waste Connections maintains are due under the contract in the event a customer fails to pay any amount or wishes to terminate.

**B.    Waste Connections' Unlawful, Unilateral Rate Increase Practice.**

23.    Waste Connections violates the form contract by systematically increasing rates by more than increases in the Consumer Price Index and by amounts that do not "adjust for", but rather exceed, any such increases.

24.    Waste Connections has carried out a systematic and deliberate practice of repeatedly increasing rates in excess of any adjustment for increases in the Consumer Price Index. Waste Connections induces customers into entering into form contracts with fixed rates while knowing, but not disclosing, that it has an internal corporate practice and strategy of continually, invariably, and unlawfully increasing rates by more than allowed by contract.

25.    Waste Connections unilaterally imposes automated increases at least annually, and often more frequently. Upon information and belief, these rate increases are directed by Waste Connections' corporate officers as part of a broad strategy to increase profit and are carried out through an automated process using Waste Connections' customer relationship management system.

26.    The amount of the rate increases vary, but are significant, and can result in customers paying more than 50% more than agreed by the end of an agreement term. Each increase Waste Connections imposed on class members exceeds increases, if any, in the increases in the Consumer Price Index that would allow them under the contract and exceeds increases needed to

8

adjust for these amounts, and the totality of such increases similarly far out-strip increases in the Consumer Price Index over any given time period. Upon information and belief, based upon investigation, Waste Connections imposed rate increases identical in timing, methodology, and intent (and similar if not identical in percentage) across most of its customer base in Arkansas each year during the relevant time period.

27.     These unilateral automated rate increases violate the form contractual language that governs them and is present in every contact at issue, because they exceed any Consumer Price Index increases—or increases needed to adjust for them—that could possibly justify them. They are simply mechanisms by which Waste Connections increases its profits. There is no legal justification for Waste Connections' practice of unilateral, systematic rate increases. Waste Connections knows when it presents contracts for fixed rates, that it will inflate these rates precipitously and continually. Waste Connections' practices breach the form contractual language it entered into with Plaintiff and other small businesses across Arkansas, and has resulted in it being unjustly enriched at its customers' expense. As a direct result of its unlawful rate increase conduct, Waste Connections has wrongfully taken thousands of dollars from its customers in Arkansas over the statutory period.

**C.     Waste Connections' Unlawful Fuel Surcharges**

28.     Waste Connections charges its customers a fee it calls a "Fuel Surcharge." It does so, purportedly, to proportionately pass through the increased fuel costs it incurs in providing services to customers in accordance with the contractual language in the Rate Adjustments provision.. This fee is a percentage of all the invoice charges and is significant in amount, reaching over 25% or hundreds of dollars a month for some customers. Waste Connections periodically increases the percentage of the "Fuel Surcharge," but, upon information and belief, has never

9

decreased this percentage.

29.     The "Fuel Surcharge" in no way proportionately passes through any increased fuel costs. It is wholly unrelated to Waste Connections increased fuel costs and is not charged to defray those increased costs.  Waste Connections does not apply the money received from the "Fuel Surcharge" to offset any such increased costs; rather, it is recognized as revenue and contributes directly to Waste Connections' profit. Waste Connections has not—during the relevant period—experienced any increased "fuel costs," particularly on a per-customer basis, as it enters into fixed-price fuel purchase contracts.

30.     Waste Connections did not design the "Fuel Surcharge" to "proportionately" adjust for any increased fuel costs it incurs and this fee far over-recovers any such costs. The method by which Waste Connections determines the "Fuel Surcharge" has no relation to its increased fuel costs or to any changes in those costs.  It is arbitrary in that the only driving factor is the profit Waste Connections seeks to derive from this fee while maintaining the false appearance of the fee as a legitimate charge related to specific, discrete costs. Waste Connections has done no legitimate analysis to determine the proper amount of the "Fuel Surcharge" in connection to its increased or actual fuel costs.

31.     Indeed, the "Fuel Surcharge" does not fluctuate in any way with Waste Connections' fuel or material costs and has increased while its per-customer fuel costs have decreased.  For example, the "Fuel Surcharge" charged has increased at the same time that fuel costs decreased.

32.     Additionally, Waste Connections already fully recovers any fuel costs that purportedly justify this fee through the base rate it charges customers and increases to that rate. These rates include the individual component costs of Waste Connections' business, including—

specifically—the costs of fuel, materials, and other overhead. When setting and increasing rates, Waste Connections takes into account its fuel costs to recover such costs, and the "Fuel Surcharge" is wholly unlawful as it does not reflect any fuel costs that are not already recovered. As such, Waste Connections has violated the contract through the charging of this fee to its customers or, alternatively, has been unjustly enriched by collecting deceptive fuel surcharges.

**D.      Neither Plaintiff, Nor Any Putative Class Member, Had Full Knowledge Of The "Fuel Surcharge" Or Rate Increases, Nor Did They Consent To Any Such Fees Or Increases**

33.      No putative class member, including Plaintiff had full knowledge of the facts pertaining to the rate increases or the "Fuel Surcharge" such that would allow them to realize or act on their legal claims.

34.      Waste Connections ensures that no customer can discover the true nature and illegality of the rate increases. For example, Waste Connections does not disclose the methodology—or lack thereof—that purportedly justifies the increase, how it is purportedly calculating CPI, from what baseline, or when in will implement such increases. Without such information, no customer could determine the illegality of a given rate increase imposed by Waste Connections. No customer, including Plaintiff, had the knowledge or notice for them to have "consented" or "voluntarily paid" the rate increases.

35.      Further, Plaintiff challenges the rate increases implemented in order to adjust for increases in CPI. Under the plain language of the contract, these are separate from increases that Waste Connections may implement "for reasons other than those set forth above with [c]ustomer[s'] consent." When Waste Connections implements an increase for one of the specified reasons—including to adjust for increases in CPI—a customer has no discretion whether to accept the increase. It becomes an amount due under the payment provision of the contract. If the

customer wishes to terminate the contract based upon these excess amounts, it must show that the increases did not comply with the contractual terms or pay up to six months' charges to terminate the contract under the payment upon termination provision of the contract. If the rate increase is one "for reasons other than those set forth" the customer would have a right to terminate the contract for the breach in charging more than agreed without being subject to paying the termination penalty.

36.     Waste Connections' never sought consent before implementing any of the increases. Thus, there was no consent to the increases at issue here by any class member nor could there be under the terms of the contract. Even if consent were at issue, it would be susceptible to common evidence as Waste Connections would claim that by remaining customers, customers consented.

37.     Finally, the increases at issue here were purportedly increases to adjust for increases in CPI because Waste Connections did not experience any increases in the other identified cost areas that could justify an increase.

38.     Waste Connections further ensures that customers cannot discover the true nature, purpose, and use of the "Fuel Surcharge." Waste Connections uniformly uses this term to charge this fee to Plaintiff and putative class members. It does so consistently and continually, including every time it assesses the fee on monthly invoices. Waste Connections chose this term for a reason: it has a common, understood meaning for any reasonable consumer, including for Plaintiff and putative class members, and indicates that it is a fee charged to recover fuel costs incurred by Waste Connections is related to such costs, and is used to offset or recover such costs, as implied by the common understood meaning. Waste Connections also represents through the form contract that the "Fuel Surcharge" is used to proportionately pass through its increases in fuel costs.

12

39.    Multiple courts have recognized that the usage of this specific term conveys this meaning to customers. *See, e.g., Deere Constr., LLC v. Cemex Constr. Materials, LLC,* 198 F. Supp. 3d 1332 (S.D. Fla. 2016) ("What is allegedly deceptive is that the so-called 'fuel surcharges' and 'environmental charges,' labeled as such by Defendants, were not in fact designed to cover anything related to fuel or the environment. Defendants chose the two adjectives that describe the fees being assessed. Each adjective carries meaning"); *Dover v. British Airways, PPLC (UK),* 2013 WL 5970688, at *4 (E.D.N.Y. Nov. 8, 2013) ("The plain meaning of the term 'fuel surcharge' is a supplemental charge that is reasonably related to or based upon the cost or price of fuel. This understanding comports with conventional usage."). The Oxford English Dictionary defines "surcharge" as "an additional charge or payment."

40.    By using this fee term—as opposed to a fee term that is general or accurate, like "service charge" or "additional profit fee"—Waste Connections deliberately misled Plaintiff and putative customers as to the nature, purpose, and use of the "Fuel Surcharge." Waste Connections also omitted material facts regarding the "Fuel Surcharge," including that it is not related to any actual or increased fuel costs that Waste Connections has and that Waste Connections' fuel costs are not used to set the fee. Waste Connections does not disclose that its methodology bears no relationship to its actual or increased fuel costs through the percentage it chooses to charge.

41.    Further, Plaintiff and each putative class member was under a contractual, legal obligation to pay the invoiced charges to Waste Connections. Waste Connections uniformly represented that the rate increases and "Fuel Surcharges" were amounts due under the contract which the customer had no choice but to accept under the terms of the contract. Waste Connections did not disclose that customers had any discretion to accept or forego the increases or fees, uniformly representing that the rate increases and "Fuel Surcharges" were amounts due under the

13

contract which the customer had no choice but to accept under the terms of the contract. This is due, in part, to the fact that it did not seek consent before implementing the increases. If it did not seek such consent, it would have immediately breached the agreement and allowed customers to terminate without penalty subject to a 10-day cure period. Upon information and belief, Waste Connections enforces its form contracts—including punitive provisions for attorneys' fees and future due amounts—to ensure that customers cannot escape them, even if such customers could have known that the "Fuel Surcharges" and rate increases were unlawful and deceptive.

## V.    CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action pursuant to Arkansas Rules of Civil Procedure Rule 23, and proposes the following classes:

**The Rate Increase Class:** All entities who reside in Arkansas who entered into a written contract with Waste Connections that provides "Customer agrees that the rates charged by Contractor hereunder shall be increased from time to time to adjust for increases in the Consumer Price Index" and who paid rates to Waste Connections in excess of those originally listed in dollar amounts in the written contract from June 1, 2020 to the present.

**The "Fuel Surcharge" Class:** All entities who reside in Arkansas who entered into a written contract with Waste Connections that provides "Because . . . fuel . . . costs constitute a significant portion of the cost of Contractor's services provided hereunder, Customer agrees that Contractor may increase the rates hereunder to proportionately adjust for any increases in such costs" and, from June 1, 2020 to present, paid Waste Connections a "Fuel Surcharge."

43.     Excluded from the proposed classes are customers who entered into a contract which contains an arbitration provision or class waiver.

14

44.    Also excluded from the proposed classes are members of the judiciary who preside over this case or related litigation, entities currently in bankruptcy, entities whose obligations have been discharged in bankruptcy, and governmental entities.

45.    As used in these class definitions, "Waste Connections" means Waste Connections of Arkansas, Inc., Waste Connections US, Inc., and all related entities, predecessors, subsidiaries, affiliates, and parent companies.

46.    As used in these definitions, "Fuel Surcharge" includes this fee regardless of the nomenclature used to charge it.

47.    Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

A.    **Existence And Predominance Of Common Questions Of Law And Fact.**

48.    Waste Connections engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this litigation. This common course of conduct— imposing "Fuel Surcharges" and rate increases that were unlawful and excessive— effected class members in the exact same manner. The amount of damages may differ among class members, but the fact and type of damages is uniform among all class members and flows directly from Waste Connections' common conduct. A single, uniform, pre-printed contract will govern all class members' contractual claims. Extraneous contractual evidence is prohibited by a form integration clause.

49.    This shared nucleus of facts and law gives rise to numerous questions of law and fact which overwhelm any individual issues which might exist. Such common questions include, but are not limited to, the following:

a.   Whether Waste Connections used standard form contracts with customers;

b.   Whether Waste Connections imposed rate increases on putative class members who entered into the standard contract;

c.   Whether Waste Connections imposed uniform rate increases;

d.   Whether Waste Connections' standard contract only allowed Waste Connections to increase rates to adjust for increases in the specifically identified categories of costs, specifically, to adjust for increases in CPI;

e.   Whether Waste Connections' rate increases exceeded any adjustments for increases in CPI which could support them under the contract;

f.   Whether Waste Connections' rate increases were intended to adjust for increases in the CPI;

g.   Whether the rate increases Waste Connections enacted resulted in it being unjustly enriched;

h.   Whether Waste Connections assessed "Fuel Surcharges" to customers;

i.   Whether the "Fuel Surcharges" Waste Connections imposes is designed or intended to proportionately recover for Waste Connections' actual or increased fuel costs;

j.   Whether Waste Connections has any increased fuel costs;

k.   Whether Waste Connections recovers the same costs which purportedly justify the "Fuel Surcharge" through other means, including base rates and increases to such rates;

l.   Whether Waste Connections uses revenue from the "Fuel Surcharge" to offset its fuel costs;

m.   Whether the "Fuel Surcharges" exceed any fuel costs Waste Connections may

16

incur;

n.     Whether Waste Connections has been unjustly enriched by the "Fuel Surcharges."

**B.     Numerosity.**

50.    The total number of members of each putative class is so numerous that individual

joinder is impracticable. Waste Connections has hundreds of customers in Arkansas who entered

in the form contract and paid the "Fuel Surcharge" and rate increases.

**C.     Typicality.**

51.    The claims of the named Plaintiff are typical of the claims of the classes. Plaintiff,

like other class members, entered into the form contract, paid rate increases that were not legally

justified and paid unlawful "Fuel Surcharges." Plaintiff was subject to, and harmed by, the exact

same common policies and practices which effected all class members.

**D.     Adequacy.**

52.    Plaintiff will fairly and adequately protect the interests of the members of the class

and has no interest antagonistic to those of other class members. Plaintiff shares the same interests

and was harmed by the same conduct as each other class member. Resolution of this case will

inherently vindicate and redress the interests of Plaintiff equally with class members. Plaintiff has

retained class counsel competent and experienced in prosecuting class actions and such class

counsel is financially able to represent the classes.

**E.     Superiority and Manageability.**

53.    The class action is superior to other available methods for the fair and efficient

adjudication of this controversy. Individual joinder of all members of the class is impracticable.

While the total amount at issue in this litigation is considerable, individual damages for a given

plaintiff are comparatively small and class members have little incentive to pursue individual

claims. The interests of judicial economy favor adjudicating the claims for the Plaintiff classes in a single forum rather than on an individual basis, thus also ensuring consistent adjudications and a uniformity of decision. The proposed class definitions are objective and class membership is easily determined using customer information and financial records maintained by Waste Connections. Calculation of damages can be accomplished using systematic means and objective criteria. The class action mechanism is administratively feasible and provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
#### (Rate Increase Class)

54.    All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

55.    Plaintiff and each member of the Rate Increase Class entered into standardized agreements with Waste Connections which contain identical relevant contractual language.

56.    Plaintiff and each member of the class performed on their agreements, including by paying Waste Connections for services.

57.    As set out herein, through its practice of unilaterally increasing rates by more than allowed under the contract, specifically the "Rate Adjustments" provision referring to increases based upon increases to CPI, Waste Connections breached the agreements.

58.    Plaintiff and each member of the Rate Increase Class have been directly and proximately harmed by Waste Connections' breach of contract in that each paid more than allowed by contract.

## COUNT II
## UNJUST ENRICHMENT
### (Rate Increase Class)

59.    All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

60.    To the extent necessary, this count is plead in the alternative.

61.    Through its rate increase practices, Waste Connections was unjustly enriched. Through the payment of money that was attributable to rate increases, Waste Connections knowingly accepted and retained something of value. By paying that money, Plaintiff and class members provided that value. By imposing rate increases which it knew to be not justified by any related increase in CPI, by suppressing and misrepresenting material facts (including that it would charge far more than agreed or represented), and by engaging in other wrongful and unlawful conduct as set out herein, Waste Connections' retention of the benefit would be unjust. In equity and good conscience, Waste Connections ought not retain the excess money paid by Plaintiff and the class members.

62.    Plaintiff and each member of the Rate Increase Class have been directly and proximately harmed by Waste Connections' conduct in that each paid more for products and services than they rightfully owed.

## COUNT III
## BREACH OF CONTRACT
### ("Fuel Surcharge" Class)

63.    All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

64.    Plaintiff and each member of the Fuel Surcharge Class entered into standardized agreements with Waste Connections which contain identical relevant contractual language.

65.    Plaintiff and each member of the class performed on their agreements, including by

paying Waste Connections for services.

66.     As set out herein, Waste Connections charged "Fuel Surcharges" that did not proportionately pass through increased fuel costs pursuant to the provision that allowed for them and were not related to Waste Connections' increased fuel costs. The charging of the "Fuel Surcharges" were not allowed by contract and thus breached the contract.

67.     Plaintiff and each member of the Rate Increase Class have been directly and proximately harmed by Waste Connections' breach of contract in that each paid more than allowed by contract.

**COUNT IV**
**UNJUST ENRICHMENT**
**("Fuel Surcharge" Class)**

68.     All allegations and paragraphs, aside from other counts, in this complaint are incorporated by reference.

69.     Through its practices in charging "Fuel Surcharges," Waste Connections was unjustly enriched. Through the payment of money for the "Fuel Surcharges," Waste Connections knowingly accepted and retained something of value. By paying that money, Plaintiff and class members provided that value. By charging the arbitrary "Fuel Surcharges," by suppressing and misrepresenting material facts (including that it would charge a "Fuel Surcharge" that was not intended as represented), and by engaging in other wrongful and unlawful conduct as set out herein, Waste Connections' retention of the benefit would be unjust. In equity and good conscience, Waste Connections ought not retain the excess money paid by Plaintiff and the class members

70.     Plaintiff and each member of the "Fuel Surcharge" Class have been directly and proximately harmed by Waste Connections' conduct in that each paid excessive, deceptive, and

unlawful "Fuel Surcharges."

## VII.    PRAYER FOR RELIEF

71.    Plaintiff seeks a refund of all excessive Fuel Surcharges and Rate Increases paid by entities in Arkansas to Waste Connections from June 1, 2020 to present. Plaintiff does not seek attorney's fees or punitive damages.

### Trial By Jury

Plaintiff and the Classes are entitled to, and demand, a trial by jury.

Respectfully submitted,

John Rainwater
RAINWATER, HOLT & SEXTON, P.A.
P.O. Box 17250
Little Rock, Arkansas  72222
Phone: 501.868.2500
Fax:    501.868.2508
john@rainfirm.com

Oscar M. Price, IV
Nicholas W. Armstrong
PRICE ARMSTRONG, LLC
2421 2nd Avenue North, Suite 1
Birmingham, AL 35203
Phone: 205.208.9588
Fax: 205.208.9598
oscar@pricearmstrong.com
nick@pricearmstrong.com

*Attorneys for Plaintiff*

**CERTIFIED MAIL**



7021 1970 0001 1200 1222





US POSTAGE ™ PITNEY BOWES

ZIP 72223   **$ 008.76**
02 4W
0000333501 FEB. 02. 2022

**RAINWATER HOLT & SEXTON**

P.O. Box 17250, Little Rock, AR 72222-7250

Waste Connections of Arkansas, Inc.
C/O Corporation Service Company
300 Spring Building, Ste. 900
Little Rock, AR 72201