## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**ALLEN BETH INCORPORATED**                                   **PLAINTIFF**

v.                              **No. 3:22-cv-59-DPM**

**WASTE CONNECTIONS US, INC.**
**and WASTE CONNECTIONS OF**
**ARKANSAS, INC.**                                            **DEFENDANTS**

### ORDER

The parties disagree about subject matter jurisdiction, standing, and capacity to sue.  An entity named "Sharp Office Supply, Inc." — note the Inc. — filed this proposed class action lawsuit against Waste Connections US and Waste Connections of Arkansas in the Circuit Court of Sharp County, Arkansas for breach of contract and unjust enrichment.  It alleges that Waste Connections overcharged its Arkansas commercial customers in two ways:  through authorized but excessive inflation-related adjustments in service rates;  and through unauthorized fuel surcharges.  Waste Connections removed the case, saying that all the requirements for diversity jurisdiction under the Class Action Fairness Act were satisfied.   28 U.S.C. § 1332(d).  Waste Connections also moved to dismiss, arguing that Sharp Office Supply, Inc. forfeited its corporate charter before filing this lawsuit.  An entity called "Allen Beth Incorporated" responded with a timely amended complaint naming itself in place of Sharp Office Supply, Inc.

as plaintiff. Fed. R. Civ. P. 15(a)(1)(B).   Allen Beth seeks remand. It argues that the amount in controversy does not exceed the $5 million statutory requirement.   28 U.S.C. § 1332(d)(2).   Waste Connections disagrees.   It says that the amended complaint must be dismissed because Allen Beth lacks standing to sue or capacity to sue.  The Court regrets its delay in tending to these motions.

The first issue is subject matter jurisdiction.  There is no dispute about minimal diversity or a class of at least one hundred members. The question is whether Waste Connections has shown—by a preponderance of the evidence—that a fact finder might legally conclude that the amount in controversy (excluding interest and costs) is more than $5 million.   *Leflar v. Target Corp.*, 57 F.4th 600, 603 (8th Cir. 2023);   *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013).   Jurisdiction is determined at the time of removal. The plausibility of the complaint's allegations is no longer the sole focal point, though, because the parties have offered proof.  *Leflar*, 57 F.4th at 604–05.  The Court has considered all this evidence.

Based on the Court's legal conclusions specified below, the preponderance of the evidence establishes that more than $5 million is in controversy.  The applicable time period starts five years before this suit was filed.  Based on the affidavits from Doug Mooneyham, Waste Connections US's director of operations applications, and Kendrick Ketchum, Waste Connections Arkansas's district manager, potential

damages for the allegedly illegitimate fuel surcharges total approximately $2.92 million. This total is based on an average monthly amount of $46.56 assessed to all Arkansas commercial customers over the five-year class period, discounted by the small percentage who do not pay fuel surcharges. *Doc. 32–2 at 2.* Allen Beth's evidence that its monthly fuel surcharge was less than the average does not undermine Waste Connections's calculation.

The allegedly excessive service rate increase damages are harder to quantify. Waste Connections isn't required to estimate an average amount the potential class members paid in excessive rate increase charges over the five-year period; nor must it provide a formula or methodology for calculating potential damages. *Hartis v. Chicago Title Insurance Co.*, 694 F.3d 935, 944 (8th Cir. 2012). This remains true even though, as Allen Beth points out, the information is readily available to Waste Connections. *Ibid.* Based on the evidence submitted, and various inferences that the Court concludes are reasonable, a fact finder could determine that at least $1 million in rate increase damages is in play.

To begin, Waste Connections estimates that during the five-year limitations period its total revenue from its Arkansas commercial customers based on service rates alone (excluding fees) was $9.4 million. *Doc. 32 at 22.* It also says that Arkansawyers made more than 26,000 payments to it in the twenty-month period from 1 June 2020

to 31 January 2022—averaging approximately 1,300 payments per month. *Doc. 1 at 7.* The original complaint says the rate increases occur automatically and are identical in timing, methodology, and intent (if not percentage) across its Arkansas customer base. *Doc. 2 at 9.* Further, it alleges that Waste Connections's rate increases were significant for all customers and greatly exceeded the amounts warranted by the Consumer Price Index. *Doc. 2 at 8–9.* As a result of the allegedly unauthorized rate increases, Allen Beth alleges that it and other Waste Connections customers often paid more than 50% more than the original contract price for disposal services. *Doc. 2 at 2.* Applying this high-end estimate to the $9.4 million Arkansawyers paid to Waste Connections, as much as one-third of that amount— approximately $3.13 million—could be found to be improper overcharges. Some further discount here is reasonable because the complaint alleges that the improper increases were made in different percentages. *Doc. 2 at 9.* Taking all the allegations about Waste Connections's systematic, significant rate increases imposed uniformly across its Arkansas customers as true, and drawing reasonable inferences from those facts, a fact finder could conclude that at least $1 million of Waste Connections's $9.4 million service-rate based revenue is actually in controversy. *Raskas*, 719 F.3d at 887–88. Adding a low-end attorney's fee of 30% on top of all the potential damages

(approximately $3.92 million) demonstrates that the amount in controversy exceeds CAFA's $5 million requirement.

At this early stage in the case, Waste Connections is not required to establish damages for the proposed class.  It must establish, by a preponderance of the evidence, an estimate of what the law allows. *Raskas*, 719 F.3d at 888.  Allen Beth's argument that more evidentiary certainty is required at this point under CAFA is mistaken.  *Ibid*. Waste Connections has carried its burden and shown that by a preponderance of the evidence a fact finder could reasonably conclude that more than $5 million is at issue in this case.

Beyond the evidence, Allen Beth argues that various points of law require a different analysis of the facts.  Allen Beth contends that, given how it has pleaded its case, it is legally impossible for it to recover as much as Waste Connections contends is in dispute.  Waste Connections has the better of these legal arguments.

While the plaintiff is the master of the complaint, because this is a proposed class action, the law limits a plaintiff's power to structure the claims to defeat CAFA jurisdiction.  *Standard Fire Insurance Co. v. Knowles*, 568 U.S. 588 (2013).  The governing standard embodies this principle:  the question is what amount a fact finder might conclude was in dispute under the applicable law.  *Leflar*, 57 F.4th at 603; *Raskas*, 719 F.3d at 887.  Here, Allen Beth seeks two classes of Waste Connections's Arkansas customers during a twenty-month period.

Waste Connections is correct that it is not legally impossible for those groups to recover for five years of payments—the applicable limitations period prescribed for breach of contract and unjust enrichment. ARK. CODE ANN. § 16–56–111 (contract); ARK. CODE ANN. § 16–56–115 (catch all). No sufficient reason is offered for why absent class members would seek less compensatory damages than the governing law would allow. And this kind of temporal limitation could lead to multiple non-removable cases about identical claims, which would be contrary to CAFA's purposes. *Bell v. Hershey Co.*, 557 F.3d 953, 957 (8th Cir. 2009). Reasonable attorney's fees are also properly included as part of the amount in dispute. The parties' contract says the party in breach "shall pay" reasonable fees incurred in an enforcement action. *Doc. 25–1.* By statute, Arkansas allows fees in contract cases. ARK. CODE ANN. § 16–22–308. In these circumstances, precedent is clear about the availability of attorney's fees. *Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th Cir. 2018). At this point, because the jurisdictional threshold has been met, the Court need not address the possibility of post-filing damages.

This brings the Court to the parties' second dispute—who is the correct plaintiff? The root of the problem is that this suit was filed in the wrong name. As best the Court can tell from the record compiled so far, Sharp Office Supply, Inc. has no connection with this dispute. Shelly Johnson, Allen Beth's owner and officer, is clear that Allen Beth

did business as Sharp Office Supply—no Inc.  This was the company that contracted with Waste Connections in 2006.  Bank records support Johnson's testimony, as do the contract and billing records. *Doc. 25–1 & 34–5*.  Therefore, Allen Beth has standing.  The briefing also establishes that it now has capacity to sue.  Allen Beth has belatedly registered the fictitious name Sharp Office Supply and paid a $300 fine. ARK. CODE ANN. § 4–26–405(f).  The company's failure to do so before filing is immaterial at this point.  What Allen Beth has not done is plead adequately about its fictitious name, the entity history, and the allowed statutory cure.  The Court has gathered the facts from the briefing and exhibits.  Allen Beth must fill the pleading gap in a second amended complaint.

*       *       *

Motion to remand, *Doc. 24*, denied.  Motion to dismiss, *Doc. 26*, granted as modified with leave to amend.  Second amended complaint due by 21 April 2023.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

3 April 2023